## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

ERIC BEARD, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

VETERANS GUARDIAN VA CLAIM
CONSULTING, LLC,

     Defendant.

_____/

Case No.: 1:23-cv-1080

COMPLAINT -- CLASS ACTION

DEMAND FOR JURY TRIAL

## CLASS ACTION COMPLAINT

Plaintiff Eric Beard ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to himself and on the investigation of his undersigned counsel as to all other matters, and brings this class action against Defendant Veterans Guardian VA Claim Consulting, LLC ("Defendant" or "Veterans Guardian").

## I.  NATURE OF THE ACTION

1.    This case is about illegal fees charged to disabled United States Military veterans by an unaccredited North Carolina-based company, Veterans Guardian. The fees are extracted from victims' Disability Compensation benefits paid through the United States Department of Veterans Affairs (the "VA"). Contrary to its name, Veterans Guardian preys on disabled veterans by unfairly taking tens of millions of dollars of their

disability benefits in violation of Federal law and is a *per se* violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

2. VA Disability Compensation provides a monthly tax-free payment to veterans who became sick or injured while serving in the military and to veterans whose service made an existing condition worse.[1]

3. For VA Disability Compensation, the VA rates veterans' disabilities on a scale from 0% to 100% in 10% increments (*e.g.*, 10%, 20%, 30%).[2]

4. VA Disability Compensation can be increased to compensate for dependents such as a spouse, parent, or child.[3] Depending on the circumstances, VA Disability Compensation can exceed $4,000 per month.

5. To obtain VA Disability Compensation, veterans must file a claim with the VA. There are many Veteran Service Organizations ("VSOs") who assist veterans in filing their disability claims, *without charge*. Some of the most well-known VSOs include The American Legion, Veterans of Foreign Wars, Disabled American Veterans, among many other reputable organizations made up of VA accredited claims representatives.

6. Each of these organizations were stakeholders in the implementation of the Veterans Appeals Improvement and Modernization Act of 2017 which helped to dramatically reform and simplify the processes and procedures involved in obtaining

---

[1] *See* https://www.va.gov/disability/
[2] *See* https://www.benefits.va.gov/compensation/rates-index.asp#:~:text=VA%20rates%20disability%20from%200,disability%20percentage%20for%20multiple%20disabilities
[3] *See* https://www.va.gov/view-change-dependents/

benefits or an increase in benefits.[4] Once a veteran receives an initial claim rating, they may to continue with their VSO or, alternatively, may use a for-profit VA *accredited agent* or attorney. Like attorneys representing clients before the bar of a given state, Congress empowered the VA to regulate any and all individuals and entities assisting veterans with filing claims for VA Disability Compensation benefits.

7.     38 C.F.R. § 14.629 (b)(1) plainly states that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."

8.     More importantly, VA accredited agents and attorneys may only charge claimants for representation provided **after** the VA has issued an **initial** decision on the claim or claims, and the agent or attorney has complied with the power of attorney requirements in § 14.631 and the fee agreement requirements in paragraph (g) of this section. 38 C.F.R. § 14.636(c)(1)(i).

9.     Despite these clear prohibitions that agents must be accredited and may not charge for initial claims preparation, Veterans Guardian, an unaccredited organization, routinely assists in the preparation, presentation and prosecution of these initial disability claims and then charges Veterans.

10.     Defendant charges the veterans a contingency fee of five times the amount of any monthly VA Disability Compensation. This amount obviously exceeds the zero-

_____

[4] https://news.va.gov/press-room/vas-appeals-modernization-act-takes-effect-today-new-law-streamlines-departments-current-claims-and-appeals-process-for-veterans/

charge prohibition set by the VA.

11. Defendant's uniform contract asserts that its services and fees are "in compliance with Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14." A copy of Plaintiff's Consulting Service Agreement (the "Contract") with Defendant is attached hereto as Exhibit A.

12. There is no provision in Chapter 38 or Chapter 59 of the United States Code that allows any third-party, including Veterans Guardian, to prepare initial claims for submission to the VA and to be compensated for doing so.

13. All fees collected by Defendant for initial claims are unlawful as a matter of law as they stem from conduct strictly prohibited by federal law.

14. Thus, Defendant routinely violates federal regulations in four ways: (1) its representatives are unaccredited; (2) it charges fees to assist veterans in connection with an initial claim; (3) it does not comply with the power of attorney requirements established by the VA; and (4) it does not comply with the fee agreement requirements established by the VA.

15. Plaintiff seeks to represent all similarly situated veterans who paid Veterans Guardian a fee in connection with an unlawful agency contract for any assistance with preparing initial claims for VA Disability Compensation.

## II. JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 members in the proposed

4

Class defined below, the combined claims of the proposed Class members exceed $5,000,000, exclusive of interest and costs, and as discovery will show, more than two-thirds of the proposed Class members are citizens of a state other than Defendant's state of citizenship, North Carolina.

17.     Alternatively, this Court has federal question jurisdiction over this action pursuant to 28. U.S.C. § 1331 as the foundation for the claims made arise under the Constitution, laws, or treaties of the United States, specifically Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14 which prohibit non-accredited agents from aiding in the creation and/or submission of disability claims to the VA.

18.     This Court possesses personal jurisdiction because Veterans Guardian deliberately and regularly conducts business, marketing, claim distributing, promoting VA claims assistance and appeals, and/or collections, in North Carolina, and has its principal place of business in Pinehurst, North Carolina. The illegal fees at issue are issued, invoiced, processed, and collected from the State of North Carolina. Veterans Guardian has obtained the benefits of the laws of North Carolina and profited handsomely from North Carolina commerce.

19.     Defendant's contract with Plaintiff and the Class includes a Choice of Law and Venue provision stating: "This agreement is entered into and shall be governed by the laws of the State of North Carolina and said states courts shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this agreement."

20.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because

5

Veterans Guardian is a limited liability company subject to personal jurisdiction in this District and does business in this District. Additionally, venue is proper because a substantial portion of the acts, events, and/or unlawful activity giving rise to the claims asserted occurred in this District.

### III. PARTIES

21.    Plaintiff Eric Beard is a United States Army Veteran and former Specialist who received an honorable discharge after his time in the military. Mr. Beard resides in Sandusky, Erie County, Ohio and is an Ohio citizen.

22.    Defendant Veterans Guardian VA Claim Consulting, LLC is a North Carolina Limited Liability Company with its principal place of business in Pinehurst, North Carolina.  Limited Liability Company Membership in Veterans Guardian is as follows: (a) Member Scott Greenblatt is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina; and (b) Member William Taylor is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina. Accordingly, upon information and belief, all members of Defendant's limited liability company are residents and citizens of North Carolina.

23.    Veterans Guardian is headquartered and has its principal place of business at 75 Trotter Hills Circle, Pinehurst, North Carolina 28374. Upon information and belief, Veterans Guardian's employees are employed and conduct the following business at its headquarters, without limitation: prepare VA Disability Compensation claims, correspond to client inbound calls, manage its website, discuss VA Disability Compensation claims

6

with veterans, request medical records, request military records, review medical records and military records, place telephone calls to veterans to prepare veterans for private medical examination, place telephone calls to veterans to prepare veterans for the VA's C&P examination, email draft copies of completed VA Disability Compensation claims to veterans, mail hard copies of VA Disability Compensation Claims to veterans, provide instructions on how to execute a VA Disability Compensation Claim Packet and the necessary attachments, place telephone calls to veterans to explain how to submit intent to file, email invoices to veterans to collect a debt, receive payments from veterans as a result of Defendant's debt collection activities, and other related activities.

24.     Defendant prepares, presents, and/or prosecutes VA Disability Compensations Claims and Appeals. Defendant operates a brick-and-mortar location in Pinehurst, North Carolina. Upon information and belief, Defendant solicits and targets veterans from all 50 states and territories, and owns and operates the website: https://vetsguardian.com/.

## IV.  FACTS

### A.     The History of VA Disability Compensation Benefits

25.     The United States Department of Veterans Affairs ("VA") is organized into three administrations: (a) Veterans Benefits Administration ("VBA"); (b) Veterans Health Administration ("VHA"); and (c) National Cemetery Administration ("NCA"). The VBA

provides a variety of disability compensation, pension, education, and more.[5] VBA is the administration responsible for approving and awarding VA Disability Compensation.

26.     The United States recognizes the impacts of military service on veterans that result in disabilities that are service connected and secondary service connected, diseases, or injuries incurred or aggravated during active military service.[6] The VA's disability program provides monthly VA Disability Compensation payments to veterans who suffered injuries during their military service or secondary to their military service.

27.     In 2022, nearly 3.9 million veterans received monthly disability compensation payments for partial or complete disabilities.[7]

**B.     Federal Law Contains Strict Guidelines Governing the Challenged Conduct**

28.     Sections 14.626 through 14.637 of Title 38 of the Code of Federal Regulations, implement Chapter 59 of the United States Code governing the representation of claimants for veterans' benefits. There are very clear and strict dictates under this law including:

- Anyone assisting "in the preparation, presentation, and prosecution of claims for VA benefits" must be accredited by VA for that purpose. 38 C.F.R. § 14.629 (b)(1)

- Only accredited agents and attorneys may receive a fee from claimants or

---

[5] *See*
https://www.benefits.va.gov/benefits/about.asp#:~:text=Protects%20the%20benefits%20paid%20to,%2C%20Veterans%2C%20and%20their%20families
[6] *See* https://helpdesk.vetsfirst.org/index.php?pg=kb.page&id=1785
[7] *See* https://www.census.gov/newsroom/press-releases/2021/veterans-report.html

appellants for their services. 38 C.F.R. § 14.636(b).

- Fees charged by accredited Agents and attorneys after an initial decision must comply with power of attorney requirements of 38 C.F.R. § 14.631 and the fee agreement requirements of 38 C.F.R. § 14.636(g).

- All agreements for fees for services must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. Specifically, those agreements must contain: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

29. A copy of those signed written fee agreements must be sent to either the VA or Office of General Counsel ("OGC") within 30 days of execution. 38 C.F.R. § 14.636(g)(3).

30. No money or fees may ever be charged or paid by the veteran before a notice of the initial claim is issued by the VA. 38 U.S.C. § 5904(c)(1).

31. Fees exceeding 33 1/3 percent of past-due VA disability benefits awarded are presumed unreasonable. 38 C.F.R. § 14.636(f)

32. It is unlawful to charge veterans for assisting with initial claims or the recovery of future VA benefits.

33.     Upon information and belief, Veterans Guardian is not an accredited agent of the VA nor are any of its employees. Veterans Guardian has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for VA Disability Compensation Claims that it prepares and collects a fee from U.S. veterans. Veterans Guardian also charges fees for initial claims and for amounts that do not comply with the VA's strict limitations set forth above, in violation of 38 U.S.C. § 5904(c)(1).

C.     **Per Se Violation of the UDTPA by Defendant Veterans Guardian**

34.     By failing to first receive accreditation from the VA prior to assisting Veterans in the preparation and presentation of their veterans' benefits claims and charging exorbitant fees that are contingent upon the success of veterans' claims, Defendant routinely violates federal regulations; and by violating regulations that were designed to protect veterans, Veterans Guardian has committed a *per se* violation of the unfair and deceptive trade practice law, N.C. Gen. Stat. § 75–1.1.

35.     Contrary to the specific prohibitions against unaccredited agents preparing VA Disability Compensation Claims, the Contract states that its services and fees are "in accordance with Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations § 14." This is a false statement. Veterans Guardian is an unaccredited agency and is therefore strictly prohibited, by Federal Law, from assisting in preparing or presenting disability claims to the VA. Even though the Contract informs clients that Veterans Guardian is unaccredited, it takes advantage of veterans with its superior position of knowledge and sophistication.

10

36.     The purpose of the regulations *viz.* 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 is to protect veterans from exploitation by the unlawful business practices as challenged here. For example, the purpose of enacting the law and regulations set forth above was to ensure that "claimants for Department of Veterans Affairs (VA) benefits have responsible, qualified representation in the preparation, presentation, and prosecution of claims for veterans' benefits." See 38 C.F.R. § 14.626.

37.     Veterans Guardian's unfair business practices have caused many unwary veterans to hire Veterans Guardian believing it to be a legitimate provider of lawful VA claim services, when in fact the Contracts are unlawful due to the fact that Veterans Guardian is not accredited by the VA; Veterans Guardian's services are not permissible under the regulations; no person (accredited or unaccredited) is permitted to charge any fees on initial claims, Veterans Guardian's claim over VA benefits in the form of "agreed-to" fees and the penalties imposed for the non-payment of fees are unlawful under the regulations. Thus, by violating regulations that were enacted by Congress to protect veterans from becoming victims of unlawful, unscrupulous, and unfair business practices, Veterans Guardian violates the UDTPA, § 75-1.1. Its unlawful and unfair business practices have proximately caused Plaintiff's damages in the form of unlawful payments made from his monthly benefit payments.

**D.     Investigations into Veterans Guardian and Other "*Claims Sharks*" in the Press**

38.     In the last few years, Veterans Guardian's practice of illegally preying on veterans rob them of their disability benefits has come under significant scrutiny by the

media, veterans' advocacy groups and the VA itself.

39.    On April 1, 2022, WBTV a television station Charlotte, North Carolina, ran a news segment warning veterans against Veterans Guardian after conducting a private investigation into its services.  The news segment included interviews with veterans who had used their services and found that Veterans Guardian "asked veterans for their personal login credentials and submit[ted] claims in their name." WBTV also reported that it had seen an email from Veterans Guardian in which it coached a client on how to ask for documents from the VA and the client told WBTV that Veterans Guardian had warned him specifically not to mention to the VA that he was working with Veterans Guardian. Below is a snapshot from the news segment:



'A pack of vultures.' American Legion warns veterans about NC Company

Veterans Guardian previously the subject of WBTV investigation

To move along with the process, we need some additional information to continue developing your individual claim strategy. Once we receive your information, we will complete the assessment and get back to you quickly with an individual strategy to maximize your VA disability compensation!
?????
Please provide the following documents to matthew.brawn@vetsguardian.com or by Fax to (910) 493-3988.

1) DD214 - Certificate of Release or Discharge from Active Duty

2) VA Rating Decision Letter - If you have previously filed a claim the VA would have mailed you a letter with an explanation of their decision. If you do not have your Decision Letter, you can obtain this via the VA hotline.

Call the VA at 1-800-827-1000 - Request to speak to a representative and ask for the following "Please fax me my Rating Decision Letter to (910) 493-3988"
(Please have them send it in YOUR name on the cover letter, not Veterans Guardian)

If you have a Rated Disability with the VA please also provide the following:

3) VA Disability Rating Breakdown Letter - To obtain this letter please call the VA at 1-800-827-1000.

Request to s[...]
with the list[...]
(Please have[...]

WBTV INVESTIGATES
AMERICAN LEGION WARNS VETERANS ABOUT NC COMPANY
CHARGING FOR HELP GETTING BENEFITS
6:15 | 70°
3 WBTV

40.     WBTV also reported that the American Legion was concerned about Veterans Guardian's services and fees, calling it a "a pack of vultures" and a "predatory claims company."[8]

41.     On April 27, 2022, the United States House of Representatives, Committee on Veteran's Affairs, held an investigative hearing on the practices of unaccredited claims consultants. At this conference, several veterans' advocates such as the American Legion, National Organization of Veterans' Advocates ("NOVA") and Veteran of Foreign Wars ("VFW") testified on the predatory practices of unaccredited agencies such as Veterans Guardian. For example, the VFW, referred to non-accredited consulting groups as "Claim Sharks," and called out a few predatory practices employed by these companies such as "guaranteeing increases in benefits" and "promising no-cost consultations."

42.     More recently, CBS News and the Texas Tribune also brought to light the predatory nature of unaccredited claims consultants such as Veterans Guardian.[9]

---

[8] https://www.wbtv.com/2022/04/01/pack-vultures-american-legion-warns-veterans-about-nc-company/

[9] *See* CBS News, "Some private companies charge hefty fees to help veterans with disability claims," May 11,2023 at https://www.cbsnews.com/news/veterans-disability-claims-companies-charge-fees/ (last visited on August 3, 2023); Texas Tribune, "As veteran disability claims soar, unaccredited coaches profit off frustration with VA system," July 5, 2023 at https://www.texastribune.org/2023/07/05/veterans-disability-benefits-brian-reese-va-claims-insider/ (last visited on August 3, 2023).

Case 1:23-cv-01080-CCE-LPA     Document 1     Filed 12/08/23     Page 13 of 36

**E. Veterans Guardian Submitted False or Misleading Statements to Congress**

    **i. Veterans Guardian's First False Statement to Congress**

43. On April 27, 2022, the House Committee on Veterans' Affairs Subcommittees on Disability Assistance and Memorial Affairs and Oversight and Investigations conducted an open session and joint oversight hearing entitled "At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process" (the "Hearing").

44. Among the witnesses testifying was William Taylor ("Mr. Taylor"), co-founder and Chief Operating Officer of Veterans Guardian. When questioned during the hearing, Mr. Taylor testified under oath that "Veterans Guardian has not received a cease-and-desist letter from the VA."[10] The Hearing Committee later determined that the Letter sent by the VA OGC staff attorney was a cease-and-desist letter.

    **ii. Veterans Guardian's Second False Statement to Congress**

45. On May 9, 2022, Hearing Committee staff emailed Brian Johnson ("Mr. Johnson"), Veterans Guardian's Vice President of Government and Public Affairs seeking to confirm Mr. Taylor's testimony that Veterans Guardian "has not received a cease-and-desist letter from the VA." That same day, Veterans Guardian's through Mr. Johnson, falsely stated that Veterans Guardian had not received any cease-and-desist letter from VA OGC. *Id.*

---

[10] *Id.*

### iii.    Veterans Guardian's Third False Statement to Congress

46.    On June 9, 2022, Hearing Committee staff met with Mr. Taylor, Mr. Greenblatt, Mr. Johnson and other representatives of Veterans Guardian to discuss its inaccurate statements regarding the cease and desist letter from the VA. When again asked about Mr. Taylor's testimony, Veterans Guardian officials stated that they did not recall receiving a cease-and-desist letter from the VA OGC. *Id.*

47.    Following Veterans Guardian's third false or misleading statement and/or omission, the Hearing Committee staff explicitly referenced the Letter addressed to Mr. Greenblatt. At that time, after the Hearing Committee's fourth attempt to seek the truth from Veterans Guardian's officials, Veterans Guardian finally admitted that it had received the Letter, but did not believe that the Letter constituted a cease-and-desist letter.

### iv.    Once Reminded that His False Statements to Congress Carry Five Years in Prison, Mr. Taylor Supplemented his False Testimony

48.    On June 27, 2022, the Chairs and Ranking Members of the Subcommittees sent a letter to Mr. Prober and advised that Mr. Taylor's testimony was inaccurate because the VA OGC categorized the Letter to Veterans Guardian as a cease-and-desist letter. Notably, the Committee cited the June 27, 2022 letter, and reminded Mr. Taylor that it is a crime, punishable by fines and imprisonment of up to 5 years, to knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation to Congress. Subsequently, Mr. Taylor supplemented his testimony to Congress admitting to receipt of the letter from the VA.

49. Despite the cease and desist letter from the VA, Veteran's Guardian continues to thwart Federal law to the detriment of Plaintiff and the class.

## F. PLAINTIFF'S FACTS

50. Plaintiff Eric Beard was honorably discharged from the United States Army on or around August 2009.

51. Plaintiff suffered from several service-connected injuries and secondary service-connected injuries as a result of his military service as an intelligence analyst.

52. Because his injuries were known and obvious, Plaintiff knew that he had to file a claim for disability benefits with the VA.

53. Prior to contacting Veterans Guardian, Plaintiff had never filed any claim for VA disability compensation. His sole purpose in contacting Veterans Guardian was to obtain assistance filing his initial VA disability claim.

### i. Plaintiff's Initial Claim

54. In or around August 2022, Plaintiff believed that the PTSD he suffered from was due to his time in the military and caused him to suffer a complete disability.

55. Plaintiff went to the internet to gather information about filing an initial VA Disability Compensation Claim with the VA.

56. Plaintiff's internet search took him to the Veterans Guardian website.

57. After spending time reading information on Veterans Guardian's website,[11] Plaintiff used the website to contact the company directly about filing an initial claim with

---

[11] *See* https://vetsguardian.com/.

the VA.

58.     Thereafter, Plaintiff received a call from a representative of Veterans Guardian that explained its representation and services.  Importantly, Veterans Guardian's representative ensured Plaintiff that its VA services were legal and in full compliance with Federal Law.  If he received any benefits from his initial claim filing with the VA, Veterans Guardian would charge Plaintiff five (5) times any monthly VA Disability Compensation payment received by Plaintiff.  After speaking with Defendant's representative, and believing its services to be legal and legitimate Plaintiff signed the Contract and became a client of Veterans Guardian.

59.     Once it signed Plaintiff as a client, Veterans Guardian solicited access to Plaintiff's medical records and military records to review and develop a strategy to prepare Plaintiff's initial claim for VA Disability Compensation.

60.     Next, Veterans Guardian coordinated with an outside private medical opinion to assess Plaintiff's post-traumatic stress disorder ("PTSD") symptoms.

61.     A representative of Veterans Guardian prepared Plaintiff for his PTSD private medical examination by explaining the PTSD examination and evaluation process.

62.     Once the private medical examination was complete and Plaintiff received a medical opinion, Veterans Guardian completely drafted and prepared Plaintiff's VA Disability Compensation Claim using official VA forms, including: (a) VA Application for Disability Compensation and Related Compensation Benefits Form – 21-526EZ; and (b) VA Statement in Support of Claim Form – 21-4138. Additionally, Veterans Guardian

17

gathered the necessary attachments including Plaintiff's DD214 (Certificate of Release or Discharge from Active Duty) and private medical opinion. All of the VA forms prepared by Veterans Guardian and the necessary attachments (the "Packet") were emailed by Veterans Guardian to Plaintiff for his review. The Packet emailed was labeled "draft" as it was drafted and prepared by Veterans Guardian for ultimate submission to the VA.

63. Once Plaintiff approved the Claim Packet via email, Veterans Guardian then sent by US Mail the physical documents in the Packet to Plaintiff with instructions, including that Veterans Guardian: (a) marked specific locations where Plaintiff was required to sign and date the initial VA Disability Compensation Claim that it prepared; (b) pre-marked the Packet's envelope with the VA's mailing address that would receive the Packet; (c) pre-stamped the Packet's envelope; and (d) instructed Plaintiff to place the signed Packet in the US mail for delivery to the VA .

64. Veterans Guardian's claim preparation of Plaintiff's initial claim continued even after mailing Plaintiff's Packet to the VA. Specifically, Veterans Guardian instructed Plaintiff to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Plaintiff with a response and provide advice on how to respond to the VA.

65. Once Plaintiff's Packet was submitted to the VA, Veterans Guardian provided additional instructions to Plaintiff to present to the VA medical examiner and respond to the VA's questions.

66. Plaintiff thereafter received a call from the VA to schedule his VA

Compensation and Pension Examination ("C&P Exam").[12] A representative of Veterans Guardian prepared Plaintiff for his C&P Exam and coached him on how to present his symptoms to the VA medical examiner.

67. Contrary to Veterans Guardian's statement that it only offers "pre-filing" and "post-filing" claims assistance, Veterans Guardian assisted veterans following their submission of the Packet when it assisted with C&P Exams, simulated the C&P Exam, and prepared Plaintiff and the Class members for the C&P Exam.

68. Following the submission of the Initial Claim drafted and prepared by Veterans Guardian; and its preparation of Plaintiff for his medical exams, Plaintiff received a 100% disability rating for PTSD.

69. Plaintiff took no part in drafting his initial VA Disability Claim. Veterans Guardian and its employees are the only individuals that prepared Plaintiff's Initial Claim and prepared Plaintiff for his private medical examination and C&P examination upon filing his Initial Claim.

70. Below is an email from Veterans Guardian's representative to Plaintiff in which it admits to preparing Plaintiff's Initial Claim:

---

[12] When a veteran files a claim for VA Disability Compensation with the VA, the VA may ask the veteran to appear at an examination as part of the VA claim process. This is known as a VA claim exam or a VA compensation and pension exam.

Re: Veteran Beard: Your VA Claim Is Ready For Review

From:  Eric Beard (ericm.beard@yahoo.com)

To:      samantha.kehoe@vetsguardian.com

Date:  Thursday, September 22, 2022 at 04:46 PM EDT

Good Afternoon,

There is one mistake that I can see. I did do about one year in the reserves rough estimate would have been 09/01/2012 to 08/31/2013. This was just a period of time I was missing the service and wanted to complete my last year of my 8 year obligation doing something. It was a terrible experience. That's located at 21A.

Eric Beard

Sent from Yahoo Mail for iPhone

> On Thursday, September 22, 2022, 2:58 PM, Samantha Kehoe
> <samantha.kehoe@vetsguardian.com> wrote:
>
> Veteran Beard,
>
> Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**
>
> Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this email**,** and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**
>
> Once you've reviewed and approved your claim, we will provide you with:
> 1. A complete, printed copy of your claim
> 2. Instructions on where you'll need to add your signature and date throughout your packet
> 3. An addressed, stamped envelope to send your claim to the VA
>
> You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

about:blank                                                                                                                      1/2

71.     Plaintiff ultimately received a VA Disability Compensation of $4,278.80 per month.

20

72. Pursuant to the fee agreement contained in Veterans Guardian's Contract, Veterans Guardian invoiced Plaintiff for $21,394 ($4,278.80 x 5).

73. Plaintiff paid Veterans Guardian over $19,000 through monthly installment payments for preparing his initial VA Disability Compensation claim and is still obligated under the unlawful contract.

74. Had Plaintiff known that charging for preparation of an initial claim was unlawful or that the services for any assistance on initial claims were free if provided by an accredited attorney, accredited agent, or a VSO, he would not have entered into the agreement.

75. Upon information and belief, Veterans Guardian prepares and completes hundreds of similar initial claim forms for submission to the VA each year.

## V.    CLASS ALLEGATIONS

76. Plaintiff brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class is defined as:

> Initial Claim Class: All veterans who entered paid Veterans Guardian in connection with an initial claim for VA Disability Compensation under a contract in substantially the same form as Exhibit A.

77. Expressly excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and person or any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

21

78.    The class period is four (4) years prior to the original filing date of this action.

79.    Plaintiff reserves the right to amend the Class definition if warranted as a result of further investigation and discovery.

### Rule 23(a) Criteria

80.    <u>Numerosity</u>. Veterans Guardian's scheme has harmed and continues to harm veterans and their dependents. The members of the Class are so numerous that joinder of all members is impracticable. Veterans Guardian's website states that it has had "25K claims approved."[13] The sheer volume of its VA Disability Claim business supports a finding of numerosity.

81.    The exact number of Class members is unknown as such information is in the exclusive control of Veterans Guardian. Veterans Guardian, however, has prepared, prosecuted, and/or presented hundreds of initial VA Disability Claims on behalf of veterans disguised as *pro se* VA claims and where it charged veterans a contingent fee equivalent to five (5) times the monthly VA Disability Compensation.

82.    Due to the nature of the initial VA Disability Claims involved and the fact that Veterans Guardian assists veterans in all 50 states and online around the globe, Plaintiff believes the Class consists of at least a thousand veterans. Defendant's online ads are geographically dispersed throughout the U.S. and internationally making joinder of all Class members impracticable.

83.    <u>Commonality</u>. Common questions of law and fact affect the rights of each

---

[13] https://vetsguardian.com/about-us/ (last viewed 11/7/23)

Class member and common relief by way of damages is sought for Plaintiff and the Class.

84.     The harm that Veterans Guardian has caused is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

      a.      Whether Defendant is subject to the limitations of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14, *et seq.*;

      b.      Whether Defendant's business practices are in violation of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14;

      c.      Whether Defendant's violations of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 are *per se* violations of the North Carolina Unfair and Deceptive Practices Act ("UDTPA");

      d.      Whether Defendant's business practice of charging veterans for assistance with preparing, presenting, and/or prosecuting initial claims violates 38 C.F.R. § 14.636(c)(1)(i).; and

      e.      Whether members of the Class have sustained damages and, if so, the proper measure of such damages provided by N.C. Gen. Stat § 75-16.

85.     <u>Typicality</u>. Plaintiff's claims are typical of the claims (and defenses that will be asserted) of the Class because he is a veteran of the United States Military and his initial VA Disability Compensation Claim prepared, presented, and/or prosecuted by Defendant was typical of the type of assistance that Defendant provides to veterans following standardized practices, procedures, and policies. The documents involved in the transaction

were standard form documents and the violations are statutory in nature. Plaintiff suffered damages of the same type and in the same manner as the Class he seeks to represent. There is nothing peculiar about Plaintiff's claims.

86. <u>Adequacy</u>. Plaintiff will fairly and adequately assert and protect the interests of the Class. Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class and Plaintiff has no conflict of interest that will interfere with maintenance of this class action.

**Rule 23(b) Criteria**

87. <u>Predominance and Superiority</u>. Pursuant to FED. R. CIV. P. 23(b)(3), a class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the N.C. Gen. Stat § 75-1 require a simple identification of those veterans who are covered under the statute, and an act in violation of N.C. Gen. Stat § 75-1.1, *et seq*.

b. Plaintiff can identify members of the class once he receives a list of all veterans that entered into a Consulting Service Agreement, similar to Exhibit A, and paid money to Veterans Guardian and/or received a standard form invoice similar to Exhibit B.

c. The veterans who paid Veterans Guardian's fees related to preparation, presentation, and prosecution of initial disability claims in violation of 38

C.F.R. § 14.636(c)(1)(i) is a predominant common question that will turn on the language of the contract.

d.      There are no unusual legal or factual issues that would create manageability problems;

e.      Prosecution of a thousand separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant and could create incompatible standards of conduct;

f.      Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

g.      The claims of the individual Class members are relatively small in relation to the expenses of litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

<u>**COUNT I**</u>
**Violation of the N.C. Gen. Stat. § 75-1.1,** *et seq.*
**(Initial VA Claim Class)**

88.      Plaintiff incorporates by reference each factual allegation set forth in paragraphs 1 - 87 above.

89.      Veterans Guardian's Contract states that North Carolina law applies to the agreement between the parties regarding compensation to Veterans Guardian for preparing the VA Disability Compensation claim Packet to be submitted to the VA.

90.      The North Carolina UDTPA prohibits businesses from engaging in unfair

and deceptive acts or practices. The UDTPA largely mirrors the Federal Trade Commission Act and states that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat § 75-1.1.

91.    The UDTPA provides a four-year statute of limitations.

92.    The purpose of the UDTPA is "to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

93.    Courts have used many standards to determine whether an act or practice is "unfair," including:

(1) If the act violates industry standards

(2) Violates public policy

(3) Immoral, unethical, or unscrupulous

(4) Substantially injures consumers

(5) Inequitable assertion of the party's power or position

(6) Has the tendency to deceive

94.    "Commerce" includes all business activities, however, denominated, but does not include professional services rendered by a member of a learned profession. N.C. Gen. Stat § 75-1.1(b).

95.     Veterans Guardian charged fees to veterans for preparing initial claims for disability benefits with the VA which constitutes "commerce" under the UDTPA, as such services were rendered by unaccredited claims representatives, not a member of a learned profession.

96.     Veterans Guardian's business activities, at all times relevant to this Complaint, are considered "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

97.     Veterans Guardian's business practices occurred almost exclusively in North Carolina and violate the UDTPA because they violated public policy and were unethical, unscrupulous, illegal, and substantially injured veterans.

98.     The UDTPA was created to provide an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of contract, or breach of warranty.

99.     North Carolina courts have held that a violation of a regulatory statute that is designed to prevent unfair or deceptive conduct can constitute a *per se* violation of the UDTPA.

100.     Veterans Guardian's violation of 38 U.S.C. § 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, constitutes a violation of regulations designed to prevent unfair and or deceptive conduct against our nation's veterans and therefore is a *per se* violation of N.C. Gen. Stat. § 75-1.1.

101.     Moreover, North Carolina appellate courts have held that violations of regulatory statutes that are designed to protect consumers are *per se* violations of N.C. Gen.

27

Stat. § 75-1.1.

102.    Federal law established under 38 U.S.C. Chapter 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, are regulations that are designed to protect veterans against unfair and deceptive conduct with respect to the preparation presentation of VA disability claims. These regulations govern who can prepare these claims and how much can be charged for such services.  Accordingly, the violation of these regulations constitutes a *per se* violation of N.C. Gen. Stat. § 75-1.1.

103.    Specifically, Veterans Guardian violated sections 38 C.F.R. § 14.629 (b)(1) and § 14.636(c)(1)(i) as discussed below:

**Violation of 38 C.F.R. § 14.629:**

104.    38 C.F.R. § 14.629 (b)(1) states: "No individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose." By admittedly preparing Plaintiff's Initial Claim for VA benefits without first receiving accreditation by the VA, Veterans Guardian violated § 14.629(b)(1). Veterans Guardian prepared or aided in the preparation of Plaintiff's initial VA claim as evidenced by this communication:

28

## Re: Veteran Beard: Your VA Claim Is Ready For Review

| | |
|---|---|
| From: | Eric Beard (ericm.beard@yahoo.com) |
| To: | samantha.kehoe@vetsguardian.com |
| Date: | Thursday, September 22, 2022 at 04:46 PM EDT |

Good Afternoon,

There is one mistake that I can see. I did about one year in the reserves rough estimate would have been 09/01/2012 to 08/31/2013. This was just a period of time I was missing the service and wanted to complete my last year of my 8 year obligation doing something. It was a terrible experience. That's located at 21A.

Eric Beard

Sent from Yahoo Mail for iPhone

On Thursday, September 22, 2022, 2:58 PM, Samantha Kehoe
<samantha.kehoe@vetsguardian.com> wrote:

Veteran Beard,

Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**

Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**

Once you've reviewed and approved your claim, we will provide you with:

1. A complete, printed copy of your claim
2. Instructions on where you'll need to add your signature and date throughout your packet
3. An addressed, stamped envelope to send your claim to the VA

You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

105.     Upon clicking the link contained in the email above, Plaintiff was routed to

several VA claim forms that had been fully prepared by Veterans Guardian.

106. Defendant prepared Plaintiff's Initial Claim by selecting the initial forms, filled out the forms with necessary data for Plaintiff's specific initial claim, printed the initial claim forms and supporting documents, and mailed the completed Packet in paper form to Plaintiff's home address, along with a fully addressed envelope addressed to the VA with instructions on where to add his signature and date on the initial claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing his initial claim submission to the VA.

107. Moreover, Defendant also reminded Plaintiff in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

108. Once Veterans Guardian drafted and prepared Plaintiff's Initial Claim, it prepared Plaintiff for his private medical exam, instructed Plaintiff to submit his Initial Claim, prepared Plaintiff for his C&P medical exam administered by the VA, and Veterans Guardian instructed Plaintiff to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Plaintiff with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. § 14.629(b)(1).

109. Pursuant to this common business practice, Plaintiff received a disability determination on his Initial Claim worth roughly $4,278.80 per month.

**Violation of 38 C.F.R. § 14.631, § 14.636 and 38 U.S.C. § 5904(c)(1):**

110. 38 U.S.C. § 5904(c)(1) prohibits VA agents and attorneys from charging or being paid for services with respect to services provided before the date on which a notice of the initial claim is issued.

111. In direct contravention of this provision, Veterans Guardian, being unaccredited, charged and collected a fee for the preparation of Plaintiff's Initial Claim despite having never filed any direct-pay fee agreements with the VA nor a direct-pay fee agreement with the OGC for the initial VA Disability Compensation Claim that it prepared.

112. Further, 38 C.F.R. § 14.636(c)(1)(i) provides that *only* VA accredited agents and attorneys may charge claimants or appellants for representation provided after an agency of original jurisdiction has issued notice of an initial decision on the claim or claims for an increase in rate of benefit, and the agent or attorney has complied with (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

113. All agreements for the payment of any fees for services rendered in connection with Veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney

31

or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

114.     Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. § 14.636(g)(3).

115.     Veterans Guardian violated these provisions as well by charging a fee despite being an unaccredited claims representative and having not complied with any of the power of attorney requirements under § 14.631 and fee agreement requirements under § 14.636 (g).

116.     Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian emailed Plaintiff an invoice charging him $21,394.00 ($4,278.80 x 5) for its services in preparing Plaintiff's Initial Claim. Over the course of several months, Plaintiff paid Veterans Guardian over $19,000 in several installment payments.

117.     Thus, Veterans Guardian action of collecting fees for services provided in connection with Plaintiff's Initial Claim violated 38 C.F.R. § 14.636(b), (c), (f), (g) and § 14.631; and 38 U.S.C. § 5904(c)(1).

118.     While there was no lawful charge in connection with Plaintiff's Initial Claim, 38 U.S.C. § 5904(c)(1) establishes the maximum amount that a VA accredited agent or attorney could have charged Plaintiff if it were in connection with an increase in benefits at 33 1/3%. The amount paid by Plaintiff is far more than any allowable amount under that standard.

119.     Here, Congress created the robust regulations for VA claim services in 38

U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.*, to protect veterans similarly situated to Plaintiff from predators like Veterans Guardian. The North Carolina Supreme Court has held "Violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore,* 339 N.C. 717, 723, 454 S.E.2d 225, 228 (N.C. 1995).

120. Therefore, Defendant violated federal regulations and the UDTPA in the following ways:

    a. Preparing or assisting in the preparation and presentation of VA benefits claims while its employees are unaccredited;

    b. Charging a fee to assist with an initial VA Disability Compensation Claim;

    c. Charging fees that exceeds the rates allowed by the VA regulations for helping with such claims and/or charging fees that exceeds what is charged by VA accredited and highly vetted agents and attorneys;

    d. Exercising a claim over VA benefits in the form of "agreed-to" fees and imposing steep penalties for the non-payment of fees;

    e. Charging fees that are clearly excessive;

    f. Charging fees on initial claims that it knows are not permitted by federal law;

    g. Emailing invoices to collect debts related to claims assistance provided by its unaccredited representatives; and

h. Emailing invoices to collect debts related to claims assistance whereby Defendant charges a fee for initial claims, late fees related to an initial claim, or interest on fees related to an initial claim.

121. Plaintiff and Class members have been harmed and suffered actual damages (as defined by the UDTPA) by paying illegal fees under their Veterans Guardian standard form Consulting Service Agreements. See Exhibit A.

122. As a direct and proximate cause of Veterans Guardian's regulatory violations, Plaintiff and the Class are entitled to actual damages and compensatory damages along with injunctive relief pursuant to section N.C. Gen. Stat. § 75, *et seq*.

123. Plaintiff and the Class are entitled to treble damages pursuant to N.C. Gen. Stat. § 75-16.

124. Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1. Plaintiff and the Class have reason to believe that Defendant is violating and will continue to violate the Federal Regulations cited herein, and thereby are entitled to a declaration from the Court that the contracts with Defendant are void and unenforceable and any other concomitant equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

a. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned attorneys and their firms as Class Counsel;

34

b.      That this Court enter judgment in favor of Plaintiff and the Class for Defendant's *per se* violations of N.C. Gen. Stat. § 75-1.1, *et seq.*;

c.      That this Court award actual damages sustained by Plaintiff and the Class in an amount to be proved at trial;

d.      That this Court award treble damages as required by 75-1.1, *et seq.*, for the harm caused by Defendant;

e.      That this Court order Defendant to disgorge profits received by Defendant from sales and revenue of any kind as a result of the actions complained of by Plaintiff and the Class;

f.      That this Court order that any outstanding debts still owed by the Class under Defendant's Contract are not due and owing;

g.      Awarding Plaintiff, and Class, reasonable attorneys' fees and costs incurred in this action pursuant to N.C. Gen. Stat. § 75-16.1, *et seq.*;

h.      Enjoining Defendant from further violations of 38 U.S.C. § 59, *et seq.* and 38 C.F.R. 14, *et seq.*;

i.      Awarding Plaintiff and the Class, any pre-judgment and post-judgment interest as may be allowed under the law; and

j.      Awarding such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: December 4, 2023          **Berger Montague PC**

By:    /s/ Jeff Osterwise
         Jeff Osterwise; NC Bar No.: 39272
         Shanon J. Carson*
         1818 Market Street, Suite 3600
         Philadelphia, PA 19103
         Telephone: (215) 875-4642
         Facsimile: (215) 875-4604
         *josterwise@bm.net*
         *scarson@bm.net*

         Janet R. Varnell; FBN: 0071072*
         Brian W. Warwick; FBN: 0605573*
         Christopher J. Brochu; FBN: 1013897*
         **Varnell & Warwick, P.A.**
         400 N Ashley Drive, Suite 1900
         Tampa, FL 33602
         Telephone: (352) 753-8600
         Facsimile: (352) 504-3301
         *jvarnell@vandwlaw.com*
         *bwarwick@vandwlaw.com*
         *cbrochu@vandwlaw.com*
         *ckoerner@vandwlaw.com*

         *Attorneys for Plaintiff and the proposed Class*

         *\* pro hac vice applications forthcoming*